**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DOWNWINDERS AT RISK<br>P.O. Box 763844<br>Dallas, TX 75376;<br><br>APPALACHIAN MOUNTAIN CLUB<br>10 City Square<br>Boston, MA 02129;<br><br>SIERRA CLUB<br>2101 Webster Street, Suite 1300,<br>Oakland, CA 94612;<br><br>TEXAS ENVIRONMENTAL JUSTICE<br>ADVOCACY SERVICES<br>900 North Wayside Drive<br>Houston, TX 77023;<br><br>and<br><br>CLEAN WISCONSIN<br>634 West Main, Suite 300<br>Madison, WI 53703<br><br>*Plaintiffs*,<br><br>v.<br><br>ANDREW R. WHEELER, Administrator, U.S.<br>Environmental Protection Agency, in his<br>official capacity,<br>1200 Pennsylvania Ave., NW<br>Washington, D.C. 20460;<br><br>*Defendant*. | Civil Action No. 1:20-cv-00349<br><br>**COMPLAINT FOR<br>DECLARATORY AND INJUNCTIVE<br>RELIEF** |

## INTRODUCTION

1.      Ground-level ozone, or smog, seriously harms human health and the environment. Ozone

is formed when volatile organic compounds and nitrogen oxides, emitted from, for example,

tailpipes, smokestacks, and oil and gas production, react with sunlight. At high enough levels,

ozone impairs breathing, inflames lungs, sends people to the hospital, and can even kill. Ozone

also harms growing plants and ecosystems. The Clean Air Act requires the United States

Environmental Protection Agency ("EPA") to establish health- and welfare-protective national

ambient air quality standards ("ozone standards") to limit the amount of ozone allowed in the

outdoor air. 42 U.S.C. § 7409(a), (b). Areas with ozone pollution levels that violate the standards

must clean up their air.

2.      Ozone and its precursor pollutants travel across state lines. This interstate ozone pollution

is a major contributor to elevated ozone levels in downwind states. In the eastern United States,

"on average 77 percent of each state's ground-level ozone is produced by precursor emissions

from upwind states." 81 Fed. Reg. 74,504, 74,514/1 (Oct. 26, 2016). To address this public

health problem, the Clean Air Act includes a "Good Neighbor Provision," 42 U.S.C. §

7410(a)(2)(D)(i)(I), requiring states and EPA to control interstate pollution.

3.      EPA adopted the ozone standard at issue here in 2008, triggering a requirement for states

to adopt plans implementing the Good Neighbor Provision and submit them to EPA for approval.

73 Fed. Reg. 16,436 (Mar. 27, 2008); 42 U.S.C. § 7410(a). Between March 2013 and August

2016, EPA determined that thirty-three states failed to submit adequate plans, *see infra* para. 38,

triggering EPA's obligation to adopt and publish federal plans for those states within two years.

42 U.S.C. § 7410(c)(1).

4.      In October 2016, EPA issued the Cross State Air Pollution Rule Update ("CSAPR

Update") to establish Good Neighbor plans for twenty-two of these states under the 2008 ozone

standard, although EPA admitted this rule was only a "partial remedy," and that significant

interstate contributions to downwind violations of the 2008 ozone standard would likely

continue. 81 Fed. Reg. at 74,508.

5.      In December 2018, EPA issued the Cross State Air Pollution Close-Out Rule ("CSAPR

Close-Out") to purportedly address Good Neighbor obligations remaining after the CSAPR

Update for twenty states. 83 Fed. Reg. 65,878 (Dec. 21, 2018). In the CSAPR Close-Out, EPA

refused to implement further pollution reductions. Instead EPA claimed that the CSAPR Update

was actually a full remedy, based on modeling that allegedly showed that violations of the 2008

ozone standard in downwind states would cease by 2023, even though affected downwind states

were required to attain and maintain the 2008 ozone standard sooner.

6.      In *Wisconsin v. EPA*, the D.C. Circuit held that the CSAPR Update unlawfully failed to

require upwind States to eliminate their significant contributions to downwind nonattainment and

nonmaintenance by the deadline for downwind states to attain the 2008 ozone standard. 938 F.3d

303, 313 (D.C. Cir. 2019). The court remanded to the agency to modify the rule in a manner

consistent with the opinion. *Id.* at 336-37.

7.      Less than a month later, in *New York v. EPA*, the D.C. Circuit rejected the CSAPR Close-

Out's claim that the CSAPR Update fully discharged states' and EPA's Good Neighbor

obligations for the 2008 ozone standard, and vacated the CSAPR Close-Out. *New York v. EPA*,

781 F. App'x 4, 7 (D.C. Cir. 2019). The Court again held that EPA must "require[] upwind states

to eliminate their significant contributions in accordance with the deadline by which downwind

States must come into compliance with the [ozone standard]." *Id.* at 6 (quoting *Wisconsin*, 938

F.3d at 313).

8.      The two-year deadline for EPA to adopt and publish federal Good Neighbor plans for at least twenty eastern states, including Alabama, Arkansas, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Michigan, Mississippi, Missouri, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, West Virginia, and Wisconsin, expired between August 12, 2017 and September 26, 2018. *See infra* para. 46.

9.      The *Wisconsin* and *New York* decisions establish that the CSAPR Update and CSAPR Close-Out did not satisfy the Good Neighbor Provision.

10.     EPA has still not adopted or published federal plans that satisfy its Good Neighbor obligation for these twenty eastern states.

11.     EPA's failure to adopt and publish federal Good Neighbor plans in compliance with the two-year deadline prescribed by Congress violates the Clean Air Act. Thus, Downwinders at Risk, Appalachian Mountain Club, Sierra Club, Texas Environmental Justice Advocacy Services, and Clean Wisconsin (collectively, "Plaintiffs") seek both declaratory relief and an order to compel the Administrator to issue and publish, in the Federal Register, final federal Good Neighbor plans that eliminate significant contributions to downwind states' nonattainment and nonmaintenance of the 2008 ozone standard as expeditiously as practicable and no later than downwind states' attainment deadlines for the twenty eastern states that lack them.

12.     Because several of the downwind states include serious nonattainment areas subject to a July 20, 2021 attainment date, the federal Good Neighbor plans must be issued, and the necessary pollution reductions implemented, by the start of the 2020 ozone season in May 2020, to allow downwind states to demonstrate timely attainment.

## JURISDICTION, VENUE, AND NOTICE

13. This action arises under the Clean Air Act, 42 U.S.C. §§ 7410(a)(2)(D)(i)(I), (c)(1).

Because this action raises a federal question, this Court has jurisdiction pursuant to 42 U.S.C.

§ 7604(a)(2), 28 U.S.C. § 1331, and 28 U.S.C. § 1361. This Court may grant the relief Plaintiffs

request pursuant to 42 U.S.C. § 7604(a)(2); the Declaratory Judgment Act, 28 U.S.C. §§ 2201-

2202; and 28 U.S.C. § 1361. Plaintiffs have a right to bring this action pursuant to the Clean Air

Act, 42 U.S.C. § 7604(a)(2); 28 U.S.C. § 1361; and the Administrative Procedure Act, 5 U.S.C.

§§ 701-706.

14. By certified mail postmarked November 27, 2019, with a courtesy copy sent by

electronic mail, Plaintiffs provided the Administrator with written notice of this action as

required by the Clean Air Act, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. § 54.1-54.3.

15. Venue is vested in this Court under 28 U.S.C. § 1391(e) because the Defendant, EPA

Administrator Andrew R. Wheeler, resides in this district.

## PARTIES

16. Plaintiff Downwinders at Risk is a nonprofit corporation organized and existing under the

laws of the State of Texas, with its headquarters located in Dallas, Texas. Downwinders at Risk

is a diverse grassroots citizens group dedicated to protecting public health and the environment

from air pollution in north Texas.

17. Plaintiff Appalachian Mountain Club is a corporation organized and existing under the

laws of the Commonwealth of Massachusetts, with its headquarters in Boston, Massachusetts.

The Appalachian Mountain Club is a regional nonprofit organization dedicated to promoting the

protection, enjoyment, and wise use of the mountains, rivers, and trails of the northeast outdoors.

18.     Plaintiff Sierra Club is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in Oakland, California. The Sierra Club is a national membership organization dedicated to the protection of public health and the environment, including clean air, with more than 778,000 members who reside in all 50 states, the District of Columbia, and U.S. territories.

19.     Plaintiff Texas Environmental Justice Advocacy Services is a nonprofit organization organized and existing under the laws of the State of Texas, with its headquarters in Houston, Texas. Texas Environmental Justice Advocacy Services advances environmental justice through education, policy development, community outreach, and legal action to achieve a healthy environment for all, regardless of race or income.

20.     Plaintiff Clean Wisconsin is a nonprofit corporation organized and existing under the laws of the State of Wisconsin, with its headquarters in Madison, Wisconsin. Clean Wisconsin is a membership organization dedicated to environmental education, advocacy, and legal action to protect air quality, water quality, and natural resources in the State of Wisconsin.

21.     Collectively, Plaintiffs have members living, working, and engaging in outdoor activities in all 50 states, Washington, D.C., and U.S. territories, including in the downwind areas that receive pollution from states for which EPA has failed to issue a lawful Good Neighbor plan.

22.     Defendant Andrew R. Wheeler is the Administrator of the U.S. Environmental Protection Agency. Administrator Wheeler is charged with the duty to uphold the Clean Air Act and to take required regulatory actions according to the schedules established by the Act.

## FACTUAL BACKGROUND: OZONE

23.     Ozone, the main component of smog, is a corrosive air pollutant that inflames the lungs and constricts breathing, and likely kills people. *See Am. Trucking Ass'ns v. EPA*, 283 F.3d 355,

359 (D.C. Cir. 2002); 80 Fed. Reg. 65,292, 65,308/3-309/1 (Oct. 26, 2015); EPA, Integrated

Science Assessment for Ozone and Related Photochemical Oxidants at 2-20 to -24 tbl.2-1, EPA-

HQ-OAR-2008-0699-0405 (Feb. 2013) ("ISA"). It causes and exacerbates asthma attacks,

emergency room visits, hospitalizations, and other serious health harms. *E.g.*, EPA, Policy

Assessment for the Review of the Ozone National Ambient Air Quality Standards at 3-18, 3-26

to -29, 3-32, EPA-HQ-OAR-2008-0699-0404 (Aug. 2014) ("PA"); ISA 2-16 to -18, 2-20 to -24

tbl.2-1. Ozone-induced health problems can force people to change their ordinary activities,

requiring children to stay indoors and forcing people to take medication and miss work or school.

*E.g.*, PA 4-12.

24.     Ozone can harm healthy adults, but others are more vulnerable. *See* 80 Fed. Reg. at

65,310. Because their respiratory tracts are not fully developed, children are especially

vulnerable to ozone pollution, particularly when they have elevated respiratory rates, as when

playing outdoors. *E.g.*, *id.* at 65,310/3, 65,446/1; PA 3-81 to -82. People living with lung disease

and the elderly also have heightened vulnerability. *See* 80 Fed. Reg. at 65,310/3. People living

with asthma suffer more severe impacts from ozone exposure than healthy individuals and are

more vulnerable at lower levels of exposure. *Id.* at 65,311/1 n.37, 65,322/3.

25.      Ozone also damages vegetation and forested ecosystems, causing or contributing to

widespread stunting of plant growth, tree deaths, visible leaf injury, reduced carbon storage, and

reduced crop yields. PA 5-2 to -3; ISA 9-1. By harming vegetation, ozone can also damage entire

ecosystems, leading to ecological and economic losses. *See* 80 Fed. Reg. at 65,370/1-2, 65,377/3.

## STATUTORY AND REGULATORY BACKGROUND

26.     Congress enacted the Clean Air Act "to protect and enhance the quality of the Nation's

air resources so as to promote the public health and welfare and the productive capacity of its

population." 42 U.S.C. § 7401(b)(1). A "primary goal" of the Act is "pollution prevention." *Id.*

§ 7401(c). Congress found the Act to be necessary in part because "the growth in the amount and

complexity of air pollution brought about by urbanization, industrial development, and the

increasing use of motor vehicles, has resulted in mounting dangers to the public health and

welfare." *Id.* § 7401(a)(2).

27.     Central to the Act is the requirement that EPA establish national ambient air quality

standards for certain widespread air pollutants that endanger public health and welfare, referred

to as "criteria pollutants." *Id.* §§ 7408-7409. One criteria pollutant is ground-level ozone. *See* 40

C.F.R. §§ 50.9, 50.10, 50.15, 50.19.

28.     The national ambient air quality standards establish allowable concentrations of criteria

pollutants in ambient air, i.e., outdoor air. Primary standards protect public health, including that

of sensitive populations such as asthmatics, children, and the elderly. 42 U.S.C. § 7409(b)(1).

Secondary standards protect public welfare, including protection against damage to animals,

crops, vegetation, and water. *Id.* §§ 7409(b)(2), 7602(h). EPA must review and, as appropriate,

revise these standards at least every five years. *Id.* § 7409(d)(1).

29.     After EPA sets or revises a standard, the Clean Air Act requires EPA to take steps to

implement the standard. *See*, *e.g.*, 73 Fed. Reg. at 16,503. EPA must "designate" areas as not

meeting the standard, or "nonattainment"; meeting the standard, or "attainment"; or, if EPA lacks

information to make a designation, "unclassifiable." 42 U.S.C. § 7407(d)(1)(A)-(B).

Simultaneous with designations, the Act requires EPA to classify each ozone nonattainment area

based on the severity of its ozone pollution. *Id.* § 7511(a)(1) tbl.1. The classifications are, in

increasing order, "marginal," "moderate," "serious," "severe," and "extreme." *Id.*

30.     Ozone nonattainment areas must attain and maintain the standard "as expeditiously as practicable but not later than" deadlines given in table 1. *Id.*; *see also NRDC v. EPA*, 777 F.3d 456, 460 (D.C. Cir. 2014). Areas classified as being in "marginal" nonattainment must attain the ozone standard by a deadline three years from the date they are designated nonattainment, while "moderate" nonattainment areas have six years from the date of designation, and "serious" areas have nine years. 42 U.S.C. § 7511(a)(1) tbl.1.

31.     States must plan how they will attain the new or revised standard. They must implement certain protections designed to ensure that air quality in nonattainment areas will attain ozone standards by specified deadlines. *Id.* §§ 7410(a), (c), 7502; *see also id.* §§ 7511-7511f (provisions specific to ozone nonattainment areas by classification). The higher the classification, the longer the area has to come into attainment, but the more stringent the controls a state must adopt. Areas that fail to attain by the Act's prescribed deadlines must be reclassified to a higher classification within six months. *Id.* § 7511(b)(2).

32.     If EPA finds that a state failed to submit a plan, or EPA disapproves a state's plan, the Act requires EPA to prepare and publish in the Federal Register a federal implementation plan within two years. *Id.* § 7410(c)(1).

33.     State and federal plans must satisfy the requirements of the Act's Good Neighbor Provision, 42 U.S.C. § 7410(a)(2)(D)(i)(I). *EPA v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584, 1593-95 (2014). Plans must "prohibit[]…any source…from emitting any air pollutant in amounts which will…contribute significantly to nonattainment in, or interfere[]with maintenance by, any other State." 42 U.S.C. § 7410(a)(2)(D)(i)(I). The Good Neighbor Provision "require[s] upwind States to eliminate their significant contributions in accordance with the deadline by which downwind States must come into compliance with the [ozone standard]." *Wisconsin*, 938

F.3d at 313; *see also North Carolina v. EPA*, 531 F.3d 896, 911-12 (D.C. Cir. 2008); *accord*

*New York*, 781 F. App'x 4 at 7.

## 2008 OZONE STANDARD REVISION AND EPA'S FAILURE TO REGULATE INTERSTATE OZONE POLLUTION

34.   EPA strengthened the primary ozone standard on March 27, 2008 based on an extensive

scientific record demonstrating that the prior ozone standards were inadequate to protect public

health and welfare. 73 Fed. Reg. at 16,436. EPA set the level of the standard at 75 parts per

billion.[1]

35.   Violations of the 2008 ozone standard are found by analyzing air monitoring data to

determine whether the three-year average of the annual fourth highest eight-hour daily maximum

ozone concentrations exceeds 75 parts per billion. 40 C.F.R. § 50.15(b).

36.   The 2008 revision to the ozone standard triggered EPA's obligation to "promulgate the

designations of all areas" of the country as meeting ("in attainment of") or not meeting ("in

nonattainment of") the standard within two years—i.e., by March 12, 2010. 42 U.S.C.

§ 7407(d)(1)(B)(i) (designations due two years from the date of promulgation of the new or

revised standard). EPA extended the two-year deadline by an additional year, to March 12, 2011,

and then missed it. 77 Fed. Reg. 30,088, 30,091 (May 21, 2012). Ultimately, EPA completed all

initial nonattainment designations with respective classifications effective July 20, 2012—well

after the deadline. *Id.* at 30,088/2; 77 Fed. Reg. 34,221, 34,221/3 (June 11, 2012); *see also*

*NRDC*, 777 F.3d at 463.

---

[1] In 2015, EPA reviewed and revised the ozone standard. EPA set a new, more stringent ozone
standard at 70 parts per billion based on a finding that the 2008 standard is not requisite to
protect public health with an adequate level of safety. 80 Fed. Reg. 65,292 (Oct. 26, 2015). This
standard is not at issue here.

37.     Promulgation of the 2008 ozone standard triggered a requirement on states to submit plans for approval to EPA that implement the Good Neighbor provision, as well as other requirements of the Act. 42 U.S.C. § 7410(a) (requiring states to submit implementation plans within three years of the promulgation of a new national ambient air quality standard and setting forth requirements for plans). The deadline for upwind states to adopt plans implementing their Good Neighbor obligations under the 2008 ozone standard was March 12, 2011.

38.     Between March 2013 and August 2016, EPA determined that thirty-three states failed to submit adequate plans implementing the Good Neighbor Provision. EPA found that twenty-six states failed to timely submit: Alabama, Arkansas, California, Florida, Georgia, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Hampshire, New Jersey, New Mexico, North Carolina, Oklahoma, Pennsylvania, South Carolina, Tennessee, Vermont, Virginia, and West Virginia. 80 Fed. Reg. 39,961 (July 13, 2015) (effective Aug. 12, 2015); 81 Fed. Reg. 38,963 (June 15, 2016) (effective July 15, 2016); 81 Fed. Reg. 47040 (July 20, 2016) (effective August 19, 2016). EPA also disapproved or partially disapproved seven states' plans: Indiana, 81 Fed. Reg. 38,957 (June 15, 2016) (effective July 15, 2016); Kentucky, 78 Fed. Reg. 14,681 (Mar. 7, 2013) (effective Apr. 8, 2013); Louisiana, 81 Fed. Reg. 53,308 (Aug. 12, 2016) (effective Sept. 12, 2016); New York, 81 Fed. Reg. 58,849 (Aug. 26, 2016) (effective Sept. 26, 2016); Ohio, 81 Fed. Reg. 38,957 (June 15, 2016) (effective July 15, 2016);Texas, 81 Fed. Reg. 53,284 (Aug. 12, 2016) (effective Sept. 12, 2016); and Wisconsin, 81 Fed. Reg. 53,309 (Aug. 12, 2013) (effective Sept. 12, 2016). These determinations triggered EPA's duty to issue federal Good Neighbor plans for each state within two years. 42 U.S.C. § 7410(c)(1).

39.     In 2016, EPA promulgated the CSAPR Update as an initial attempt to implement the

Good Neighbor Provision to address the contribution of interstate pollution to ongoing violations

of the 2008 ozone standard for twenty-two eastern states: Alabama, Arkansas, Illinois, Indiana,

Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Mississippi, Missouri, New Jersey,

New York, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Virginia, West Virginia, and

Wisconsin. 81 Fed. Reg. at 74,512.

40.     EPA calculated that pollution from upwind states accounts for a large percentage of the

ozone pollution that prevents downwind states from attaining and maintaining the 2008 ozone

standard. *See id.* at 74,537 tbl.V.E.-1. Pennsylvania, for example, by itself was contributing more

than fourteen parts per billion of ozone to a downwind area that was failing to maintain the

seventy-five-parts-per-billion standard. *Id.* Illinois was contributing more than twenty-three parts

per billion. *Id.* EPA's calculations showed that, in a downwind state like Delaware, about 80

percent of the ozone pollution in the air came from upwind states.

41.     The CSAPR Update established pollution budgets for power plants in upwind states

based on a narrow set of pollution controls that EPA determined (1) were deployable in the very

short term—by the start of the 2017 ozone season—and (2) would "maximize[]" cost-

effectiveness. 81 Fed. Reg. at 74,508, 74,517. These quick and inexpensive pollution reductions

included optimizing or engaging already-installed catalytic controls, many of which were idled.

*Id.* at 74,540. The CSAPR Update did not require pollution reductions attainable through

engaging idled non-catalytic controls, installing new catalytic or non-catalytic controls at power

plants, or taking measures to reduce pollution from industrial sources other than power plants.

The CSAPR Update also did not require any additional pollution reductions to be implemented

in later years, beyond those required for the 2017 ozone season.

42.     EPA calculated that the CSAPR Update would achieve only small reductions—less than three tenths of a part per billion (0.3 ppb) on average—in the peak ozone levels experienced by downwind areas failing to attain and maintain the 2008 standard. EPA, Regulatory Impact Analysis at 3-10 (EPA-HQ-OAR-2015-0500-0580) (Sept. 2016).

43.     EPA acknowledged that the CSAPR Update did not fully discharge its obligations under the Good Neighbor Provision and that further controls would be necessary to address interstate contributions to nonattainment and maintenance problems that it projected would persist. 81 Fed. Reg. at 74,506/1, 74,520/2-522/1.

44.     In 2018, EPA promulgated the CSAPR Close-Out to purportedly address its remaining Good Neighbor Provision obligations under the 2008 ozone standard for twenty eastern states: Alabama, Arkansas, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Michigan, Mississippi, Missouri, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, West Virginia, and Wisconsin. 83 Fed. Reg. at 65,878, 65,879.[2] The CSAPR Close-Out adopted no further pollution reductions, but predicted that downwind violations of the 2008 ozone standard would abate by 2023. *Id*. at 65,878. EPA claimed that this was sufficient under the Good Neighbor Provision, *id.*, even though 2023 was later than the deadline for downwind areas to attain and maintain the 2008 ozone standard. *See* 83 Fed. Reg. 56,781, 56,784 (Nov. 14, 2018).

---

[2] Tennessee was not included because EPA previously determined the CSAPR Update would fully eliminate Tennessee's significant contributions to downwind nonattainment and nonmaintenance of the 2008 ozone standard. 81 Fed. Reg. at 74,504, 74,508 n.19; 83 Fed. Reg. at 65,882/3. Kentucky was not included because EPA separately finalized approval of a state plan for Kentucky that claimed to fully address the state's Good Neighbor obligations. *See* 83 Fed. Reg. at 65,885/3.

45.     In 2019, the D.C. Circuit rejected both the CSAPR Update and the CSAPR Close-Out. *Wisconsin*, 938 F.3d at 313; *New York*, 781 F. App'x 4 at 7. The Court held that EPA failed to "require upwind States to eliminate their significant contributions in accordance with the deadline by which downwind States must come into compliance with the [2008 ozone standard]." *Wisconsin*, 938 F.3d at 313. The court remanded the CSAPR Update to EPA for further agency action consistent with the opinion. *Wisconsin*, 938 F.3d at 336-37. The court vacated the CSAPR Close-Out. *New York*, 781 F. App'x at 7.

46.     The two-year deadlines for EPA to adopt and publish federal Good Neighbor plans for the twenty eastern states at issue in the CSAPR Close-Out expired between August 12, 2017 and September 26, 2018. *See* 80 Fed. Reg. 39,961 (July 13, 2015) (two years from effective date of Aug. 12, 2015 for Alabama, Arkansas, Illinois, Iowa, Kansas, Michigan, Mississippi, Missouri, Oklahoma, Pennsylvania, Virginia, and West Virginia); 81 Fed. Reg. 38,957 (June 15, 2016) (two years from effective date of July 15, 2016 for Indiana and Ohio); 81 Fed. Reg. 38,963 (June 15, 2016) (two years from effective date of July 15, 2016 for New Jersey); 81 Fed. Reg. 47,040 (July 20, 2016) (two years from effective date of August 19, 2016 for Maryland); 81 Fed. Reg. 53,284 (Aug. 12, 2016) (two years from effective date of Sept. 12, 2016 for Texas); 81 Fed. Reg. 53,308 (Aug. 12, 2016) (two years from effective date of Sept. 12, 2016 for Louisiana); 81 Fed. Reg. 53,309 (Aug. 12, 2016) (two years from effective date of Sept. 12, 2016 for Wisconsin); 81 Fed. Reg. 58,849 (Aug. 26, 2016) (two years from effective date of Sept. 26, 2016 for New York).

47.     The *Wisconsin* and *New York* decisions establish that the CSAPR Update and CSAPR Close-Out did not fully discharge EPA's obligation to adopt and publish federal implementation plans that satisfy the Good Neighbor Provision for the 2008 ozone standard.

48.     As of the date of this filing, EPA still has not adopted or published federal implementation plans for the states at issue in the CSAPR Close-Out that fully discharge its obligations under the Good Neighbor Provision for the 2008 ozone standard, as required by the Clean Air Act.

49.     EPA is therefore in violation of the two-year deadlines to adopt and publish in the Federal Register federal implementation plans that fully discharge EPA's obligations under the Good Neighbor Provision for the 2008 ozone standard. EPA must issue federal Good Neighbor plans for twenty eastern upwind states: Alabama, Arkansas, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Michigan, Mississippi, Missouri, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, West Virginia, and Wisconsin.

50.     Multiple areas of the eastern United States continue to experience violations of the 2008 ozone standard, due in large part to interstate ozone pollution. At the time of initial designations under the 2008 ozone standard, no ozone nonattainment areas in the eastern United States were classified as serious, severe, or extreme—the uppermost pollution classifications under the Act. 80 Fed. Reg. 12,264, 12,310-312 App. B (Mar. 6, 2015). Now, four areas in five downwind states are classified as serious due to persistent ozone pollution, including major urban areas. 84 Fed. Reg. 44,238, 44,239-40 (Aug. 23, 2019) (reclassifying the following areas from moderate to serious: Chicago-Naperville, IL-IN-WI; Dallas-Fort Worth, TX; Houston-Galveston-Brazoria, TX; New York-N. New Jersey-Long Island, NY-NJ-CT).

51.     These serious nonattainment areas are required to attain and maintain the 2008 ozone standard as expeditiously as practicable and not later than July 20, 2021. 42 U.S.C. § 7511(a)(1) tbl.1; 84 Fed. Reg. at 44,241.

52.     To enable compliance with the July 20, 2021 attainment deadline, pollution reduction measures must be in place during the 2020 ozone season, which runs from May to September. *See* 83 Fed. Reg. 65,878, 65,883-84, 65,892 (Dec. 21, 2018); 81 Fed. Reg. 74,504, 74,540 (Oct. 26, 2016). As EPA has consistently recognized, "data from the calendar year prior to [a July] attainment date . . . are the last data that can be used to demonstrate attainment with the [ozone standard] by the relevant attainment date." 83 Fed. Reg. at 65,892.

## PLAINTIFFS' INJURIES

53.     EPA's unlawful delay harms millions of people who live in areas that experience violations of, or struggle to maintain, the 2008 ozone standard due to interstate pollution, including Plaintiffs' members.

54.     Plaintiffs' members include individuals who live, work, travel, and engage in recreational activities in the areas of the eastern United States that violate or struggle to maintain the 2008 ozone standard. These include areas whose ozone exceedances are attributable in significant part to interstate pollution originating in states for which EPA has failed to adopt and publish in the Federal Register Good Neighbor plans in the timeframe required by 42 U.S.C. § 7410(c)(1).

55.     The acts and omissions of EPA alleged here harm Plaintiffs' members by prolonging poor air quality conditions that adversely affect or threaten their health, and by nullifying or delaying measures and procedures mandated by the Act to protect their health from ozone pollution in places where they live, work, travel, and recreate. Indeed, elevated ozone levels, including levels that exceed the 2008 standard of seventy-five parts per billion and also the 2015 standard of seventy parts per billion, can exacerbate Plaintiffs' members' health problems such as asthma and chronic obstructive pulmonary disease, causing physical problems that force them to limit outdoor activities that they would otherwise be able to do and enjoy.

56.     The acts and omissions of EPA alleged here also harm Plaintiffs' members' welfare interests—including their recreational, aesthetic, educational, and professional interests—because their reasonable concerns about the health effects of their ozone exposure diminish their enjoyment of activities they previously enjoyed or would like to continue to engage in, and of areas they previously enjoyed or would like to continue to use.

57.     The acts and omissions of EPA alleged here further harm Plaintiffs' members' welfare interest in using and enjoying the natural environment in areas that do not meet or struggle to maintain the 2008 standard. Elevated levels of ozone damage plant life, aquatic life, and natural ecosystems, thus harming Plaintiffs' members' recreational and aesthetic interests. Ozone damage to vegetation can lead to wildlife avoidance of certain areas, as well as a reduction in biodiversity or other changes to a local community's ecosystem, making it more difficult for Plaintiffs' members to observe, fish, cultivate, study, research, or write about wildlife, plants, or ecosystems.

58.     By delaying adoption of federal Good Neighbor plans with enhanced controls on ozone pollution in the states at issue here, EPA prolongs and exacerbates ozone levels downwind that harm Plaintiffs' members in those areas.

59.     The acts and omissions of EPA alleged here further deprive Plaintiffs and their members of procedural rights and protections to which they would otherwise be entitled, including, but not limited to, the right to comment on and participate in proceedings to establish federal Good Neighbor plans that protect against interstate ozone pollution, the right to judicially challenge final federal Good Neighbor plans that fail to protect their members, and the right to enforce federal Good Neighbor plans to remedy and prevent violations of the 2008 ozone standard.

60.    The EPA acts and omissions alleged here further injure Plaintiffs and their members by depriving them of information, including, but not limited to, EPA's findings and analysis in support of federal Good Neighbor plans and the contents of federal Good Neighbor plans. If Plaintiffs had access to such information, they would use it to, among other things: educate their members and the public about interstate ozone pollution; advocate for adoption of adequate measures to bring areas that continue to violate that standard into compliance; and more efficiently target Plaintiffs' actions to promote effective implementation of the 2008 ozone standard. The acts and omissions complained of here deprive Plaintiffs and their members of the benefits of such information and thus cause them injury.

61.    EPA's failure also hampers Plaintiffs' ability to perform certain programmatic functions essential to their missions, such as ensuring that states put in place the public health and environmental protections that accompany stronger pollution controls, and educating the public about these protections.

62.    Accordingly, the health, recreational, aesthetic, procedural, informational, and organizational interests of Plaintiffs and their members have been and continue to be adversely affected by the acts and omissions of EPA alleged here.

63.    A court order requiring EPA to promptly make and publish in the Federal Register final federal Good Neighbor plans for the twenty eastern states complained of here, as the law requires, would redress Plaintiffs' and Plaintiffs' members' injuries.

**CLAIM FOR RELIEF**

64.    The allegations of all foregoing paragraphs are incorporated as if set forth fully below.

<u>Violation of the Clean Air Act</u>

65.     The deadlines for EPA to adopt and publish in the Federal Register final federal implementation plans for Alabama, Arkansas, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Michigan, Mississippi, Missouri, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, West Virginia, and Wisconsin that fully satisfy the Good Neighbor Provision for the 2008 ozone standard expired between August 12, 2017 and September 26, 2018.

66.     EPA purported to partially discharge this obligation by issuing the CSAPR Update, but the D.C. Circuit ruled that EPA's failure to fully eliminate significant interstate contributions to downwind violations of the 2008 ozone standard in accordance with downwind states' attainment deadlines violated the Clean Air Act, and remanded the rule to EPA.

67.     EPA purported to fully discharge its obligation by issuing the CSAPR Close-Out Rule, but the D.C. Circuit pronounced the CSAPR Close-Out unlawful on October 1, 2019 and vacated it.

68.     As of the filing of this Complaint, the Administrator has failed to adopt and publish in the Federal Register final federal implementation plans for the twenty upwind states listed in Paragraph 65 that fully satisfy the Good Neighbor Provision for the 2008 ozone standard.

69.     This constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of the Clean Air Act, 42 U.S.C. § 7604(a)(2), and thus is a violation of the Act. EPA's violations are ongoing, and will continue unless remedied by this Court.

## RELIEF REQUESTED

Plaintiffs respectfully request that the Court:

(1) Declare that EPA's failure to timely adopt and publish in the Federal Register final federal Good Neighbor plans for the 2008 ozone standard for the upwind states listed in Paragraph 65 by the deadline required by 42 U.S.C. § 7410(c)(1) constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of 42 U.S.C. § 7604(a)(2);

(2) Enjoin the Administrator from continuing to violate the above-described nondiscretionary duty for each state;

(3) Order the Administrator to promulgate and publish in the Federal Register final federal Good Neighbor plans for the 2008 ozone standard for each of the upwind states identified in Paragraph 65 by a certain date;

(4) Retain jurisdiction to ensure compliance with the Court's decree;

(5) Award Plaintiffs the costs of this action, including attorney's fees; and,

(6) Grant such other relief as the Court deems just and proper.


DATED: February 7, 2020

Respectfully Submitted,

/s/ Ann Brewster Weeks (w/permission)
Ann Brewster Weeks (D.D.C. Bar No.
MA0009; MA Bar No. 567998)
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
(617) 359-4077
aweeks@catf.us

*Attorney for Clean Wisconsin*

/s/ Zachary M. Fabish (w/permission)
Zachary M. Fabish (D.C. Bar No. 986127)
Sierra Club

/s/ Neil Gormley
Neil Gormley (D.C. Bar No. 1008462)
Earthjustice
1625 Massachusetts Avenue, NW, Suite 702,
Washington, D.C. 20036
202-667-4500
ngormley@earthustice.org

*Attorney for Downwinders at Risk,
Appalachian Mountain Club, Sierra Club, and
Texas Environmental Justice Advocacy
Services*

50 F Street, NW, 8th Floor
Washington, D.C. 20001
(202) 675-7917
zachary.fabish@sierraclub.org

*Attorney for Sierra Club*